People of Puerto Rico, Plaintiff and Appellee, v. Florencio Alvarez, Defendant and Appellant. Same v. Same.

Nos. 5150 and 5151. Argued April 20, 1934.—Decided July 11, 1934.

Celestino Iriarte and F. Fernández Cuyar for appellant. R. A. Gómez, Prosecuting Attorney for appellee.

Mr. Justice Wolf delivered the opinion of the Court.

Florencio Alvarez was charged with having committed incest with each of his two daughters Angélica and Basilisa. There were two independent informations, but the cases were tried together in the court below and heard together in this court. The case was tried without a jury and the court found the defendant guilty in both cases.

■■ Each of the daughters took the stand and testified in detail as to the acts committed by the father. Each of the two girls, according to her testimony, witnessed the carnal act of the father with her sister. They slept in the same bed. Quite a little time after the supposed acts took place the elder daughter, Angélica, left her father and went to the house of her grandfather, where two of her aunts lived. She made no immediate mention of what her father had done to her. For quite a while her periods had stopped, so that one of her aunts took her back to the house of her father and turned over the daughter to her stepmother. The latter took the child to a doctor who examined her. Then the daughter returned to the house of her grandfather. It was close after her arrival that one of the aunts examined her stomach and found that the child was pregnant and then upon the insistence of one or other of the aunts the child told her story and said: "Oh, godmother, it was my father who did this

bad thing (*daño*) to me." Thereupon one or other of the aunts or both of them on further explanation by Angélica went to the house of the father and brought the other daughter to their own house, and the latter also then told her aunts what had happened. This last communication was about three months after the supposed events.

Both aunts testified at the trial as to the manifestations of the two girls and the principal defense on appeal is that the matter of corroboration or *res gestae* was too remote. The theory in part was that each or either of the girls ought to have made a complaint before to somebody and that the testimony of the aunts was inadmissible. The age of neither of the girls appears clearly from the record. The younger one testified at the trial that she was 14 years old, and the events had happened about a year before.

In the first place it stands out from the record that each of the two girls gave strong corroboration of the other. In other words, each of the girls testified to the communication had with her sister by her father. Under these facts no further corroboration was needed and it might be that the introduction of the testimony of the aunts relating to what the girls said to them could be considered as cumulative or harmless, but we do not base our decision on this ground.

Whether we consider the matter from the standpoint of *res gestae* or corroboration, the salient facts of this case show that the daughter Angélica did not complain either out of fear, respect for her father, or natural reserve, at least, until she was compelled to do so by the circumstances of her pregnancy and the insistence of her aunts. Apparently the other daughter complained at the earliest reasonable opportunity. The daughter Angélica evidently did not want to complain of her father.

A case of incest of this kind where the father is concerned presents a somewhat different aspect from ordinary cases of rape under which most of the authorities have been gathered by the appellant and the fiscal. Some of the per-

tinent authorities of the fiscal are Wigmore on Evidence, volume 2, page 654, section 1134; *People* v. *Arenas*, 39 P.R.R. 14; *People* v. *Blanco*, 40 P.R.R. 122. It is clear to our minds that the events in this case of incest happened in their natural sequence and that the declaration by Angélica to her aunts on being closely interrogated by one of them was in order. Before that time Angélica believed that her monthly periods were delayed and so did her aunts, who attempted to give her medicines to cause a return to normal conditions. We are agreed with the citation from 3 Wigmore on Evidence, page 738, in *People* v. *Arenas, supra,* as follows:

"It is to be observed that the statements need not be strictly contemporaneous with the exciting cause; they may be subsequent to it, provided there has not been time for the exciting influence to lose its sway and to be dissipated. The fallacy, formerly entertained by a few courts, that the utterance must be strictly contemporaneous (post, sec. 1756), owes its origin to a mistaken application of the Verbal Act doctrine. . ."

The "exciting influence" to which Wigmore referred had not lost its sway in this case.

The appellant also complains that the evidence was not sufficient to convict the defendant of the crime. It is true that he denied having had any communication with either of his children and it was suggested by him and also by his wife that Angélica had had relations with a young man. The wife of the defendant also gave testimony to the effect that it had been impossible for him to have left the room, as testified to by Angélica, without being heard by said wife. We agree with the fiscal that the court had ample evidence before it to convict the defendant and that it was not bound to believe testimony to the contrary.

The judgment should be affirmed.